UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| INDIANA MICHIGAN POWER COMPANY,<br><br>Petitioner,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1392,<br><br>Respondent. | CAUSE NO.: 1:19-CV-388-HAB-SLC |

## OPINION AND ORDER

Indiana Michigan Power Company (the Company) has filed a Petition to Vacate or Modify Arbitration Award (ECF No. 1) that arose out of a labor grievance between the Company and Local Union 1392, International Brotherhood of Electrical Workers (the Union). The Company seeks an order from this Court to vacate or modify a June 11, 2019, back pay award related to the grievance arbitration. It also seeks an order vacating the arbitrator's award of attorney fees, issued on June 28, 2019.

The Union has filed a Complaint in a separate cause number, seeking to enforce the same arbitration awards. That matter has been consolidated with this cause.[1]

---

[1] The Union's contention is that the Company relied on the wrong statute when it filed a motion under the Federal Arbitration Act instead of filing a complaint under the Labor Management Relations Act. The Union takes issue with the Company's procedure, not because the court's standard for reviewing the arbitration orders is impacted, but because a motion is not subject to the pleading and service of process rules that apply to the commencement of a civil suit by complaint.

The Union does not explain what would be achieved by requiring that the Company perfect service under Federal Rule of Procedure 4 rather than, as it did, through Rule 5. With

## BACKGROUND

The parties' relationship, as it pertains to this proceeding, is governed by a Master Collective Bargaining Agreement and a local collective bargaining agreement (collectively referred to as the CBA). The Company discharged an employee, Daniel Johnson, on July 20, 2017, for engaging in outside employment while on sick leave. The Union filed a grievance on his behalf, alleging that Johnson was improperly discharged. The matter proceeded through the grievance process, culminating in an arbitration before Cynthia Stanley (the Arbitrator).

The matter was heard in arbitration on December 5, 2018. After the submission of post-hearing briefs, the Arbitrator entered an Award and Opinion on February 21, 2019, finding that the discharge was not for a justifiable reason and sustaining the grievance. The Arbitrator ordered that Johnson be immediately reinstated "with full back pay, benefits, and seniority," and that the Company "purge his file of all refence to [the] discipline." (ECF No. 1-7 at 8.)

Johnson was reinstated in March 2019. However, the parties did not agree on the calculation of backpay and damages. The parties agreed to waive a hearing and instead submit briefing with supporting documentation as to their backpay calculations so the Arbitrator could issue a damages award. The parties disputed various aspects of a backpay award, such as: whether and in what amount Johnson's backpay should be

---

briefing complete, neither party has suggested that the Court does not have before it the materials and arguments that are necessary and pertinent to its review of the backpay and attorney fee awards. Accordingly, the Court declines the Union's request to find that the Motion should be dismissed as procedurally improper and will proceed to review the matter on the merits. The Court's standard of review in doing so is set forth later in this Opinion and Order.

reduced for failure to mitigate his damages; whether Johnson's interim earnings from his side-business should be deducted from his backpay; whether Johnson's backpay should be reduced for the period of time during which the Company claimed Johnson was unavailable to be present at the third-step grievance meeting; the amount of Johnson's overtime backpay; the amount of Johnson's bonus backpay; whether Johnson's backpay should include the amount of money he paid for health insurance during the period of his discharge, minus the amount he would have paid for health insurance on the Company's plan had he not been discharged; whether Johnson's backpay should include his unused Personal Days Off time of eight hours; whether Johnson's backpay should include the amount of money he paid for additional vacation time prior to his discharge but was unable to use because of his discharge; the amount of Johnson's straight time backpay; and, whether Johnson should be awarded interest on the backpay. The parties agreed that Johnson's backpay award would be off-set for the unemployment compensation he received. The Company proposed that Johnson receive no backpay, as it calculated the backpay, after reductions for mitigation and offsets, at close to negative $64,000. The Union calculated Johnson's backpay damages at $264,438.89.

On June 11, 2019, Arbitrator Stanley entered a Supplemental Ruling on Back Pay:

**Supplemental Ruling on Back Pay**

On February 21, 2019, the arbitrator entered a make-whole order in this arbitration. The parties could not reach agreement on the details of that make-whole order. Briefs were duly submitted on or before June 7, 2019.

The Company's figures for back-pay total a negative $29,166.51. The arbitrator finds the Company's positions on back-pay to be frivolous and in bad-faith. The arbitrator ORDERS the Company to reimburse the Union for attorney's fees expended in the Supplemental Brief stage. The arbitrator finds the Union's figures to be in good order.

(ECF No. 1-11.) Accordingly, the Company was ordered to pay Johnson $244,850.83, plus interest of 8% equaling $19,588.07, for a total amount of $264,438.39. The Arbitrator ordered $15,655.83 of the backpay to be deposited into Johnson's 401(k) account rather than paid to Johnson directly. The Arbitrator did not order the Company to make a matching contribution to Johnson's 401(k), or include an amount for unrealized growth, as the Union had requested.

Based on the Arbitrator's conclusion that the Company's position on back pay was frivolous and in bad faith, and her order that the Company reimburse the Union for attorney fees expended in the supplemental remedy stage of the arbitration, the Arbitrator retained jurisdiction for 60 days on the attorney fees issue and ordered briefing. On June 28, 2019, the Arbitrator entered a Ruling on Attorney Fees, ordering the Company to pay $2,560.00 for attorney fees.

On September 9, 2019, the Company filed a Petition or Motion to Vacate or Modify Arbitration Award, pursuant to the Federal Arbitration Act (FAA), directed at the arbitrator's backpay order dated June 11, 2019, and attorney fees order dated June 28, 2019. The parties filed a Joint Motion for Briefing Schedule, which the Court granted.

On October 2, 2019, before briefing was complete, the Union filed a Complaint to Enforce Arbitration Award pursuant to Section 301 of the Labor Management Relations Act (LMRA), which was assigned cause number 1:19-CV-419-HAB-SLC. The Complaint sought to enforce the same arbitration orders dated June 11, 2019, and June 28, 2019, alleging that the Company's refusal to comply with the Arbitrator's award was a breach of the CBA. Thereafter, the parties agreed that cause number 1:19-CV-419-HAB-SLC

4

should be consolidated with this cause. On November 6, 2019, the Court granted the motion to consolidate. On November 15, 2019, the Company filed its reply brief in this action, and on November 25, filed its Answer and Affirmative Defenses to the Union's Complaint, plus a Counterclaim. On December 13, 2019, the Union filed its responsive pleading to the Company's Counterclaim.

**STANDARD OF REVIEW**

The Court's review of the Arbitrator's award, whether under the FAA or under Section 301 of the Taft-Hartley Act is sufficiently narrow to prevent the Arbitrator's decision from becoming a "junior varsity trial court[] where subsequent appellate review is readily available to the losing party." *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993) (explaining that because arbitration is intended to be the final resolution of a dispute, judicial review is narrow); *see also Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994) (noting that judicial review of arbitration awards under the FAA was so "tightly limited" that "perhaps it ought not be called 'review' at all").

Indeed, "[e]ver since federal courts began enforcing arbitration awards, the scope of judicial review of the award has been extremely narrow." *Chi. Newspaper Publishers' Ass'n v. Chi. Web Printing Pressmen's Union No. 7*, 821 F.2d 390, 393 (7th Cir. 1987) (quoting *Ethyl Corp. v. United Steelworkers of Am., AFL–CIO–CLC*, 768 F.2d 180, 183 (7th Cir. 1985)). Courts must "uphold an award so long as 'an arbitrator is even *arguably* construing or applying the contract and acting within the scope of this authority." *Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1025 (7th Cir. 2013) (quoting *Local 15, Int'l Bhd. of*

*Elec. Workers v. Exelon Corp.*, 495 F.3d 779, 782–83 (7th Cir. 2007) (emphasis in *Johnson*)). With respect to the authority granted to arbitrators to fashion remedies, the Supreme Court stated:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

"A decision draws its essence from the collective bargaining agreement when it has a plausible foundation in the terms of the agreement." *Clear Channel Outdoor, Inc. v. Int'l Unions of Painters & Allied Trades, Local 770*, 558 F.3d 670, 675 (7th Cir. 2009). "It is only when the arbitrator *must have* based his award on some body of thought, or feeling, or policy, or law that is outside the contract that the award can be said not to "draw its essence from the collective bargaining agreement.'" *Id.* (first citing *Arch of Ill., Div. of Apogee Coal Corp. v. Dist. 12, United Mine Workers of Am.*, 85 F.3d 1289, 1292 (7th Cir. 1996); then quoting *Ethyl Corp.*, 768 F.2d at 184–85) (emphasis in *Arch of Ill.*) (ellipses omitted)).

## ANALYSIS

**A.     Attorney Fee Award**

The Company argues that the award of attorney fees should be vacated under the fourth statutory ground that is recognized in § 10(a) of the FAA for vacating an arbitration award: the "*arbitrators exceeded their powers*, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a) (emphasis added). The Company asserts that the attorney fee award was not an interpretation of the agreement between the parties because the CBA stated, with respect to the arbitration procedure, that "[t]he Company and the Union shall each bear their own expenses and shall equally bear all compensation and expenses of arbitration." Additionally, they agreed that the arbitrator "shall have no authority to . . . add to, detract from, or in any way modify the terms of the Agreements." Accordingly, when the Arbitrator awarded attorney fees, she failed to arbitrate the dispute in accordance with the agreement and exceeded her powers.

The Company notes that the Arbitrator's only basis for the award—a conclusory statement that the Company's back pay position was "frivolous and in bad-faith"—does not purport to rely on any language in the CBA. There is nothing in the CBA that discusses frivolity or bad-faith or that allows the prevailing party to be awarded attorney fees. Given the clear intent of the parties to each bear their own expenses and equally bear all compensation and expenses of the arbitration, such an award was the Arbitrator's own brand of industrial justice, impermissibly based on some body of thought, or feeling, or policy, or law that is outside the contract.

The Union submits that there is ample authority for the proposition that an arbitrator possesses inherent authority to award attorney fees in response to frivolous and bad faith conduct. The Union cites to the seminal labor arbitration treatise, Elkouri & Elkouri, *How Arbitration Works*. Regarding attorney fees, the treatise provides:

> Although, absent statutory or contractual authorization, it is not customary to award attorneys' fees against the offending party in private-sector arbitration, a request for attorneys' fees may be granted for the same reasons as a punitive damage award: bad faith, or egregious, flagrant, willful, and repeated violations of the contract.

BNA, Elkouri & Elkouri: *How Arbitration Works*, Chapter 18., § 18.3.H.i, Remedies in Arbitration.

The Court starts with the undisputed fact that the CBA did not expressly authorize the Arbitrator to award attorney fees against either party. To the contrary, the CBA stated that each party would bear its own attorney fees. Although it is obvious that the Arbitrator did not agree with the Company's position regarding backpay, and this Court is bound by the Arbitrator's view of the facts, the CBA language does not suggest that an award of attorney fees was contemplated or authorized by the parties to the arbitration. *See Local 879, Allied Indus. Workers of Am. v. Chrysler Marine Corp.*, 819 F.2d 786, 789 (7th Cir. 1987) (A court "must consider whether it is at all plausible to suppose that the remedy [the arbitrator] devised was within the contemplation of the parties and hence implicitly authorized by the agreement.") (quoting *Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159, 1163 (7th Cir. 1984)). As the CBA stated that each party "shall" bear their own expenses, the Arbitrator must have based her award on some body of thought, or feeling, or policy, or law that is outside the contract.

Moreover, it seems to the Court that the attorney fees in this case occupy a unique category in the sense that they were not imposed as a remedy for the CBA violation itself. They were imposed as a remedy for the Company's conduct in the presentation of argument concerning the correct amount of backpay damages. But the parties only gave the Arbitrator authority to determine "[w]hether there was justifiable reason, or just cause, in [Johnson's] discharge, and, if not, what the remedy shall be." (ECF No. 1-7 at 2.)

The Court considers that the Seventh Circuit has held that an arbitrator had "ample discretion" to award attorney fees against a union where the collective bargaining agreement did not discuss attorney fees. *Prate Installations, Inc. v. Chi. Reg'l Council of Carpenters*, 607 F.3d 467, 474 (7th Cir. 2010). However, the distinction here is that the CBA was not silent regarding expenses and how they would be borne between the parties. The CBA contained restrictive language. Ordering fees due to bad faith or frivolous argument would require an addition to, or modification of, the fee language. But the CBA specifically stated that the arbitrator "shall have no authority to . . . add to, detract from, or in any way modify the terms of the Agreements." Accordingly, the Court agrees that the award of attorney fees should be vacated.

**B.    Backpay Award**

The Company submits that the Back Pay Award (1) provides for damages that are outside of the scope of the arbitration agreement, (2) are improperly calculated as exceeding the benefits provided by the Company, and (3) result in double payment. The Company relies upon § 11 of the FAA, which authorizes a court to modify an award in three circumstances:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11(a)–(c).

*1.     Backpay Predating Discharge Date*

The arbitration award included backpay pre-dating Johnson's date of termination of July 20, 2017. The Company asserts that the scope of the arbitration was Johnson's discharge and any award necessary to make him whole. Therefore, calculating backpay to a time pre-dating the discharge exceeded the arbitrator's authority and is subject to a modification. *See* 9 U.S.C. § 11(b) (referring to an award on a matter not submitted to the arbitrator).

The Union argues that nothing in the CBA prevented the Arbitrator from including backpay for a period from June 26 to July 20, 2017. In its briefing to the Arbitrator, the Union argued that Johnson's backpay should reach back before July 20, 2017, to the date the Company ended his sick pay. It argued that doing so would accomplish the make whole remedy.

The Court agrees with the Union. The Company takes an improperly narrow view of what matter was submitted to the Arbitrator. The Union grieved Johnson's termination from employment. The "matter" that was submitted to the Arbitrator was whether the

10

Company had just cause to terminate Johnson and, if not, what the remedy should be. The Arbitrator's findings of fact show that the termination of sick pay benefits was intertwined with the discharge. Additionally, fashioning the remedy, as mentioned above, is an area where an arbitrator has broad discretion, and where judicial review is extremely limited.

## 2. *Health Insurance Benefits*

The Company appears to have conceded that there is no basis to vacate or modify the award as it pertains to the reimbursement for health insurance. (Reply Mem. 10–11, ECF No. 14.)

## 3. *Overtime, Double-Time, and ICP Bonus*

The Company contends that the Arbitrator made evident material mistakes in the description of the backpay award of $ 233,794.67 when she included overtime and double time. The overtime and double time awards were based on the maximum overtime and double time available to any employee in Johnson's division, yet Johnson did not historically work the maximum hours available. The Company also offers an Incentive Compensation Plan (ICP) bonus. The Company calculated the ICP bonus based on the average of individuals in a similar position, but the Arbitrator awarded the maximum available. According to the Company, awarding the maximum overtime and ICP bonus available, regardless of Johnson's work history, resulted in a material mistake in the description or calculation of the backpay award.

The Company's argument is simply another way of arguing that the Arbitrator's decision is wrong on the merits, and that is precisely the type of review that is beyond

the Court's purview. Accordingly, there is no basis to modify the award of overtime, double time, and ICP bonus in the backpay.

## 4. *Vacation Buy-In and PDO Time*

"When an arbitration award orders a party to pay damages that have already been paid or which are included elsewhere in the award, a court may modify the award." *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994) (noting that "[d]ouble recovery constitutes a materially unjust miscalculation which may be modified under section 11 of the [FAA]").

The Company argues that the Arbitrator's award of $772.85 to reimburse Johnson for a vacation buy-in for vacation time he was not permitted to take or be reimbursed for, and award of $285.36 for an unreimbursed Personal Day Off (PDO) were already accounted for in the backpay calculation as regular time. Accordingly, the Arbitrator's award amounts to double recovery that can be modified under § 11 of the FAA. The Union's response is that these arguments were already rejected by the Arbitrator, and the Company is prohibited from seeking a second opinion from this Court.

PDO days are discretionary days an employee can take off and still receive the standard straight pay for an eight-hour workday. At the time of his discharge, Johnson had eight remaining hours of PDO. He was awarded his regular rate of pay for those eight hours ($285.36). The Arbitrator also awarded straight time pay of $126,546.08 for June 26, 2017, through March 3, 2019. The Arbitrator, by accepting the Union's calculation of damages, incorporated a double payment into her award. The double payment appears to have been an oversight, as the Arbitrator indicated that her award was

intended to make Johnson whole. She did not indicate any intention for liquidated or punitive damages, or any other damages outside a make-whole remedy. Accordingly, this was a material miscalculation that appears evident from the face of the award. A reduction of $285.36 from the award is appropriate.

The vacation buy-in appears to be on different footing. The Company's vacation buy-in system permits employees to pay a monthly amount to purchase up to a week's worth of vacation time. At the time of his discharge, Johnson had paid $772.85 into the buy-in system. He did not receive credit for the buy-in or reimbursement. It is not evident from the Arbitrator's decision that the award for damages in the amount Johnson paid in was already included elsewhere in the award. Thus, there is no evident material miscalculation in the Arbitrator's award as it pertains to the unreimbursed vacation buy-in.

5.  *Deductions*

The Company disagrees with the Arbitrator's decision not to recognize any deductions other than an award for unemployment benefits. These arguments present no basis to believe that modification is permissible. Failing to agree with the Company's mitigation arguments is not an evident material miscalculation or material mistake, a matter not submitted to the arbitrator, or an imperfection of form that does not affect the merits of the controversy. 9 U.S.C. § 11(a)–(c). The Company's arguments treat the arbitration as a junior varsity trial court where subsequent appellate review is readily available. "If parties cannot rely on the arbitrator's decision—if a court may overrule that decision because it perceives factual or legal error in the decision—the parties have lost

the benefit of their bargain." *Carpenter Local No. 1027, Mill Cabinet-Indus. v. Lee Lumber & Bldg. Material Corp.*, 2 F.3d 796, 798 (7th Cir. 1993). Accordingly, no setoff modifications will be made to the Arbitrator's award.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART the Company's Petition or Motion to Vacate or Modify Arbitration Award (ECF No. 1). The Arbitration award is modified as follows: (1) the award of attorney fees issued on June 28, 2019, in the amount of $2,560.00 is vacated; and (2) the award of backpay issued on June 11, 2019, is modified to remove the order that the Company reimburse the Union for attorney fees expended in the Supplemental Briefing stage and to remove the award of $285.36 for one unpaid personal day. The Complaint and related pleadings in consolidated case 1:19-cv-419 remain pending in this matter. The parties are granted until March 27, 2020, to file a status identifying any outstanding issues and discussing the procedural posture of this case in light of the Court's rulings in this Opinion and Order.

SO ORDERED on March 12, 2020.

                                      s/ *Holly A. Brady*
                                      JUDGE HOLLY A. BRADY
                                      UNITED STATES DISTRICT COURT